UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOVERNMENT EMPLOYEES
INSURANCE CO., GEICO
INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and GEICO
CASUALTY CO.,

      Plaintiffs,

v.                                                    Case No: 8:21-cv-2556-VMC-JSS

JOSEFINA SOSA, NOVA
DIAGNOSTICS, CORP and
PATRICK LEE AGDAMAG, M.D.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiffs move for entry of final default judgment against Defendants Nova

Diagnostics, Corp. (Nova Diagnostics) and Patrick Lee Agdamag (Agdamag)

pursuant to Federal Rule of Civil Procedure 55.  (Motion, Dkt. 215.)  For the reasons

that follow, the undersigned recommends that the Motion be granted in part.

## BACKGROUND

This action arises from an alleged scheme by five medical clinics and their

associated personnel to submit non-reimbursable insurance charges to Plaintiffs for

payment.  (Dkt. 1.)[1]  Plaintiffs are insurance companies that issue automobile

---

[1] The medical clinics involved in the alleged scheme are Defendants Himes Walk in Clinic, L.L.C. (Himes Clinic), Florida Wellness Center, Inc. (Florida Wellness), Personal Rehabilitation, Inc.

insurance policies to motorists and pay claims arising under those policies in accordance with applicable law.  (*Id.* ¶ 3.)  Among the benefits that Plaintiffs provide to their insureds are no-fault, personal injury protection (PIP) benefits issued pursuant to Florida's Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730–627.7405 (the No-Fault Law).  (*Id.* ¶¶ 9–18.)  Under the No-Fault Law, Plaintiffs are "not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered [or] [t]o any person who knowingly submits a false or misleading statement relating to the claim or charges."  Fla. Stat. § 627.736(5)(b)1.a, 1.c; (Dkt. 1 ¶ 10–11.)

According to the Complaint, Defendants have submitted or caused to be submitted thousands of no-fault PIP claims for reimbursement to Plaintiffs since 2015 for "medically unnecessary, illusory, unlawful, and otherwise non-reimbursable" health care services.  (Dkt. 1 ¶ 1.)  Plaintiffs allege that throughout the purported scheme, the Defendant Medical Clinics unlawfully operated without legitimate

---

(Personal Rehabilitation), Ybor Medical Injury and Accident Clinic, Inc. (Ybor Medical), and Nova Diagnostics (together, the Defendant Medical Clinics). (Dkt. 1 ¶ 4.)  Defendant David Kalin is alleged to be the owner and member of Himes Clinic and to have falsely purported to serve as the medical director at Florida Wellness, Personal Rehabilitation, and Ybor Medical.  (*Id.* ¶ 4(i).)  Defendants Kalin, Norma Cabezas, Maikel Cabrera, Josefina Sosa, and Evelin Perez are alleged to have performed fraudulent services at Himes Clinic that were billed to Plaintiffs.  (*Id.* ¶ 4(ii).)  Defendant Janis Gomez is alleged to be the owner and controller of Florida Wellness, and Defendants Kalin and Marisol Vazquez are alleged to have performed fraudulent services at Florida Wellness that were billed to Plaintiffs.  (*Id.* ¶ 4(iii).)  Defendant Ariel Santos is alleged to have owned and controlled Personal Rehabilitation, and Defendants Kalin and Yahumara Ugarte are alleged to have performed fraudulent services at Personal Rehabilitation that were billed to Plaintiffs.  (*Id.* ¶ 4(iv).)  Defendant Angela Duncan is alleged to have owned and controlled Ybor Medical, and Defendants Kalin and Maria Padron are alleged to have performed fraudulent services at Ybor Medical that were billed to Plaintiffs.  (*Id.* ¶ 4(v).)  Finally, Defendant Antonia Guerra is alleged to have owned and controlled Nova Diagnostics and to have hired Defendants Marie Antoinette Brister and Agdamag as Nova Diagnostics' purported medical directors.  (*Id.* ¶ 4(vi).)  Defendants Kalin, Janet De La Cruz, and Maria Ramos are alleged to have performed fraudulent services at Nova Diagnostics that were billed to Plaintiffs.  (*Id.*)

medical directors to supervise their billing and operations in violation of the Florida Health Care Clinic Act, Fla. Stat. § 400.990 *et seq.* (the Clinic Act). [2]  (*Id.* ¶¶ 19–33.) Plaintiffs also allege that Defendants misrepresented the identities of the individuals providing services at each of the Defendant Medical Clinics, in order to fraudulently bill Plaintiffs for services, including initial patient examinations, follow-up patient examinations, and physical therapy services that were either illusory or provided in violation of Florida law. [3]  (*Id.* ¶¶ 34–47.)  Plaintiffs further allege that Defendants fraudulently misrepresented the extent of injuries to Plaintiffs' insureds and "purported to subject virtually every Insured to a medically unnecessary course of 'treatment' pursuant to predetermined, fraudulent protocols designed to maximize the billing" they could submit to Plaintiffs.  (*Id.* ¶¶ 48–138.)  As part of the scheme, "Defendants systematically submitted or caused to be submitted thousands" of claims and treatment reports to Plaintiffs "seeking payment for the Fraudulent Services for which the Defendants were not entitled to receive payment." (*Id.* ¶ 139.) According to Plaintiffs,

---

[2] Pursuant to the Clinic Act, each of the Defendant Medical Clinics was required to appoint a medical director, whose responsibilities included "[c]onduct[ing] systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful; [taking] immediate corrective action about discovery of a fraudulent or unlawful charge . . . [and ensuring] that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided."  (Dkt. 1 ¶ 17 (quoting Fla. Stat. § 400.9935).)  "A charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed . . . but that is not so licensed, or that is otherwise operating in violation of this part . . . is an unlawful charge and is noncompensable and unenforceable."  (*Id.* ¶ 18 (quoting Fla. Stat. § 400.9935(3)).)

[3] Plaintiffs allege that Defendants submitted claims in violation of the No-Fault Law, which prohibits "reimbursement for massage or for services provided by unsupervised massage therapists" and Florida Statutes § 460.403, which "requires registered chiropractic assistants to work under the direct supervision of a licensed chiropractic physician."  (Dkt. 1 ¶¶ 12–13 (citing Fla. Stat. §§ 627.736, 460.403(7)).)

"[e]ach and every charge submitted through the [Defendant Medical Clinics] has been fraudulent and unlawful[.]"   (*Id.* ¶ 2.)   Plaintiffs further allege that Defendants fraudulently concealed their scheme, which resulted in Plaintiffs paying thousands of otherwise non-reimbursable claims and incurring more than $4.9 million in damages. (*Id.* ¶ 141–43.)

Plaintiffs' Complaint alleges civil violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1962(c) and (d); violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 *et seq.*; common law fraud; and unjust enrichment.   (Dkt. 1.)   Plaintiffs also seek declaratory judgments that they are not obligated to pay reimbursement of pending insurance claims that were submitted through the Defendant Medical Clinics.   (*Id.*)

Nova Diagnostics is one of the medical clinics through which the alleged non-reimbursable claims were submitted, and Agdamag was one of Nova Diagnostics' purported medical directors during the relevant period.   (*Id.* ¶ 4(vi).)   Nova Diagnostics and Agdamag failed to answer or otherwise respond to the Complaint. [4]   The Clerk of Court entered Plaintiffs' requested default against Nova Diagnostics on February 4, 2022 (Dkt. 89), and against Agdamag on February 16, 2022 (Dkt. 93).   Plaintiffs initially moved for a final default judgment against Nova Diagnostics and Agdamag on June 10, 2022 (Dkt. 146), however the court denied that motion without prejudice

---

[4] The remaining Defendants appeared and defended the action, *see* (Dkts. 46, 49, 73, 90, 106, 107, 108, 110), with the exception of Defendant Maria Padron, who was dismissed from this action prior to her filing of a responsive pleading (Dkt. 45), and Defendant Antonia Guerra, who was dismissed for failure to effectuate service (Dkt. 118).

with leave to refile the motion after Plaintiffs' claims against all other Defendants were resolved (Dkt. 147).  The remaining Defendants have now either settled with Plaintiffs, been dismissed from this action, or are in default.[5]  (Dkts. 58, 118, 132, 156, 168, 181, 187, 197 208, 212, 214.)

In the Motion, Plaintiffs seek entry of a final default judgment against Nova Diagnostics and Agdamag on their Twenty-Eighth Cause of Action for violation of FDUTPA, on their Twenty-Ninth Cause of Action for common law fraud, and on their Thirtieth Cause of Action for unjust enrichment, and against Nova Diagnostics for a declaratory judgment that Nova Diagnostics has no right to receive payment for pending bills submitted to Plaintiffs.  (Dkt. 215.)  Plaintiffs served a copy of the Motion on Agdamag (Dkt. 217) and Nova Diagnostics (Dkt. 223).  Neither Defendant has appeared to oppose the Motion.

## APPLICABLE STANDARDS

When a party fails to plead or otherwise defend a judgment for affirmative relief, the Clerk of Court must enter a default against the party against whom the judgment was sought.  Fed. R. Civ. P. 55(a).  If the plaintiff's claim is for a sum certain or an ascertainable sum, then the clerk, upon the plaintiff's request supported by an affidavit showing the amount due, must enter a default judgment.  Fed. R. Civ. P. 55(b)(1).  In all other cases, the party entitled to judgment must apply to the district court for a default judgment.  Fed. R. Civ. P. 55(b)(2).  A court may enter a default judgment

---

[5] On December 20, 2022, Plaintiffs filed a notice of dismissal with prejudice as to Defendant Josephine Sosa.  (Dkt. 225.)

against a defendant who never appears or answers a complaint, "for in such circumstances the case never has been placed at issue." *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986).

A defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005); *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[6] However, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (emphasis omitted). Therefore, in considering whether to enter default judgment, the court must first determine whether the complaint states a claim for relief. *GMAC Com. Mortg. Corp. v. Maitland Hotel Assocs., Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) ("A default judgment cannot stand on a complaint that fails to state a claim.") (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997)). In addition to the pleadings, the court may also consider evidence presented in support of the motion for default judgment, including affidavits. *Equal Emp. Opportunity Comm'n v. Titan Waste Servs. Inc.*, No. 3:10-cv-379-MCR-EMT, 2014 WL 931010, at *6 (N.D. Fla. Mar. 10, 2014); *Super Stop No. 701, Inc. v. BP Prod. N. Am. Inc.*, No. 08-61389-civ, 2009 WL 5068532,

---

[6] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

at *2 n.4 (S.D. Fla. Dec. 17, 2009) (noting that "unchallenged affidavits are routinely used to establish liability and damages" for default judgment); *see also Shandong Airlines Co., Ltd v. CAPT, LLC*, 650 F. Supp. 2d 1202, 1207 (M.D. Fla. 2009) (relying on declaration and documentary evidence to support plaintiff's alleged damages on default).

## ANALYSIS

### A. Service of Process

To be entitled to a default judgment, a plaintiff bears the burden to establish proper service of the complaint on the defaulting party. *See Rajotte v. Fabco Metal Prod., LLC*, No. 6:12-cv-372-ORL-28, 2012 WL 6765731, at *2 (M.D. Fla. Dec. 13, 2012), *report and recommendation adopted,* No. 6:12-cv-372-ORL-28, 2013 WL 57722 (M.D. Fla. Jan. 4, 2013) (denying motion for default judgment without prejudice due to improper service). A district court may not enter default judgment against a defendant who was not properly served. *Colclough v. Gwinnett Pub. Schs.*, 734 F. App'x 660, 662 (11th Cir. 2018) ("Given the improper service, the Court lacked jurisdiction over the matter and could not render a default judgment or enter default."); *Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1368 (11th Cir. 1982) (holding that default judgment entered against defendant who was not properly served is void); *see also Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of such service (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant.").

- 7 -

Plaintiffs therefore bear the burden to establish sufficient service of process on Agdamag, an individual, and on Nova Diagnostics, a corporation. Federal Rule of Civil Procedure 4(e)(1) allows for service of process on an individual pursuant to the law of the state where the district court is located or where service is made. Section 48.031 of the Florida Statutes, in turn, allows for service of process on an individual "by leaving [copies of the complaint or other initial pleading or paper] at [the individual's] usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents." Fla. Stat. § 48.031. Federal Rule of Civil Procedure 4(h) allows for service of process on a corporation by any manner prescribed by Rule 4(e)(1), including by following state law. Section 48.081 of the Florida Statutes allows for service of process on a corporation by serving the corporation's registered agent designated pursuant to section 48.091 of the Florida Statutes. Fla. Stat. § 48.081.

Plaintiffs filed an affidavit of service indicating that service was made on Agdamag at his residence on January 19, 2022 by leaving a copy of the summons and complaint with its exhibits with Agdamag's brother, a co-resident over the age of 15, and explaining the contents to Agdamag's brother, who accepted service. (Dkt. 71-1.) Plaintiffs also filed an affidavit of service on Nova Diagnostics indicating that service was made on December 20, 2021 by serving Nova Diagnostics' registered agent designated pursuant to section 48.091 of the Florida Statutes. (Dkt. 72-1.) The undersigned therefore finds that Plaintiffs have properly effected service on both Agdamag and Nova Diagnostics.

## B. Liability

Default judgment is proper only if the well-pleaded factual allegations in the Complaint establish that Plaintiffs are entitled to the relief sought.  *Tyco Fire & Sec. LLC*, 218 F. App'x at 863.  As explained above, Plaintiffs seek final default judgment against Nova Diagnostics and Agdamag for violations of the FDUTPA, common law fraud, and unjust enrichment, and against Nova Diagnostics for a declaratory judgment that Nova Diagnostics has no right to receive payment for pending bills that have been submitted to Plaintiffs.  (Dkt. 215 at 1–2.)  The undersigned recommends that Plaintiffs' Complaint contains sufficient factual allegations to find Nova Diagnostics and Agdamag[7] liable on each cause of action.

### 1. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*

The FDUTPA declares unlawful any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204.  A "person who has suffered a loss" as a result of an FDUTPA violation may bring an action to recover actual damages, plus attorney's fees and court costs.  Fla. Stat. § 501.211; *see Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1207 n.5 (11th Cir. 2011).  The FDUTPA is to be "construed liberally to . . . protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or

---

[7] At the court's request, Plaintiffs also filed a declaration and certificate stating that Agdamag is not currently serving in the military, thereby satisfying the requirements of 50 U.S.C. § 3931, Protection of servicemembers against default judgments.  (Dkt. 221.)

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 389 F. Supp. 3d 1137, 1149 (S.D. Fla. 2018) (quoting Fla. Stat. § 501.202). "Trade or commerce" under FDUTPA includes the provision of health care services. *Id.*; *State Farm Mut. Auto. Ins. Co. v. Advantacare of Fla., LLC*, No. 6:19-cv-1837-Orl-41LRH, 2020 WL 2630226, at *8 (M.D. Fla. May 22, 2020) (denying motion to dismiss FDUTPA count based on submission of insurance claims).

To state a claim under FDUTPA, a plaintiff must allege three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097–98 (11th Cir. 2021) (quoting *Carriulo v. Gen. Motors Co.*, 823 F.3d 977, 985–86 (11th Cir. 2016)). Whether an act or practice is "deceptive" is determined objectively, and "the plaintiff must show that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Carriulo*, 823 F.3d at 983–84 (quoting *State, Off. of the Att'y Gen. v. Com. Comm. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007)). An act or practice is "unfair" when it is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Marrache*, 17 F.4th at 1098 (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). Damages for purposes of an FDUTPA action "may exist when the product is rendered valueless as a result of the defect[.]" *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, No. 6:11-cv-1373-Orl-

31GJ, 2011 WL 6450769, at *5 (M.D. Fla. Dec. 21, 2011) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).  Additionally, "[w]hen a FDUTPA claim is predicated upon fraudulent conduct, the allegations must satisfy [Federal Rule of Civil Procedure] 9(b)'s heightened pleading standard."  *Gov't Emps. Ins. Co. v. AFO Imaging, Inc.*, No. 8:20-cv-2419-VMC-CPT, 2021 WL 734575, at *10 (M.D. Fla. Feb. 25, 2021) (citing *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, No. 8:20-cv-604-VMC-JSS, 2020 WL 5350303, at *3 (M.D. Fla. Sept. 4, 2020)).

The undersigned recommends that Plaintiffs' Complaint contains sufficient allegations to establish each element of an FDUTPA violation by Nova Diagnostics and Agdamag.  Plaintiffs sufficiently allege that the submission of non-reimbursable claims through Nova Diagnostics for payment to Plaintiffs was deceptive in that it was likely to deceive a reasonable person in similar circumstances.  For instance, Plaintiffs allege that Agdamag and his predecessor Defendant Brister, claimed to be legitimate medical directors at Nova Diagnostics, when in reality, they failed to conduct any of the functions required of a medical director, such as ensuring that medical services were lawfully rendered and that billing was properly reimbursable.  (Dkt. 1 ¶¶ 27–28, 32.)  Rather, Nova Diagnostics operated without a legitimate medical director in violation of the Clinic Act, and the services in provided to Plaintiffs' insureds during the relevant time were unlawful and non-reimbursable.  *E.g.*, (*id.* ¶¶ 19, 25–33, 34–38, 48–49.)  In billing Plaintiffs for those services, Nova Diagnostics and Agdamag represented that the claims were legitimate and submitted supporting documentation to that effect.  *See* (*id.* ¶¶ 139–40 (detailing supporting documentation submitted with

fraudulent claims).)   A reasonable insurance company in Plaintiffs' position would likely rely on those representations that the claims were for legitimate, lawful, and reimbursable medical services.   *See, e.g.*, *Advantacare of Fla., LLC*, 2020 WL 2630226, at *7 ("These allegations make it plausible that Advantacare MSG . . . operated unfairly or deceptively by allowing Dr. Alvarez to shirk his duties as a medical director.").

Plaintiffs also sufficiently allege that Nova Diagnostics' and Agdamag's conduct was "unfair" in that it offended established public policy under the Clinic Act, the No-Fault Law, and other licensing laws and that it was otherwise "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Marrache*, 17 F.4th at 1098; *see* (Dkt. 1 ¶¶ 25–33).   For example, Plaintiffs allege that through their conduct, Nova Diagnostics and Agdamag subjected Plaintiffs' insureds to medically unnecessary and unlawful services for the purposes of increasing their fraudulent billing to Plaintiffs.   *E.g.*, (Dkt. 1 ¶¶ 49, 54–59); *Advantacare of Fla., LLC*, 2020 WL 2630226, at *7; *AFO Imaging, Inc.*, 2021 WL 734575, at *11 ("Plaintiffs have sufficiently alleged a deceptive or unfair practice under FDUTPA.")

Plaintiffs further allege that Nova Diagnostics' and Agdamag's conduct caused Plaintiffs to incur damages because upon receipt of the "facially-valid documents . . . in support of the fraudulent charges at issue" Plaintiffs complied with their "statutory and contractual obligations to promptly and fairly process claims within 30 days." (Dkt. 1 ¶ 78.)  As a result and in reliance on Defendants alleged fraud, Plaintiffs paid thousands of non-reimbursable claims submitted by and through Nova Diagnostics

and Agdamag.  *See* (Dkt. 1-5; Dkt. 1 ¶ 78; Dkt. 215-1.)  Thus, Plaintiffs have sufficiently alleged deceptive and unfair acts by Nova Diagnostics and Agdamag that caused Plaintiffs to incur damages sufficient to find Nova Diagnostics and Agdamag liable as to the Twenty-Eighth Cause of Action for violation of the FDUTPA.  *See, e.g.*, *AFO Imaging, Inc.*, 2021 WL 734575, at *10; *Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *6 (denying motion to dismiss FDUTPA claim where "State Farm had a statutory right to refuse to pay the claims submitted by Defendants while in violation of HCCA licensing requirements [and] paid the claims as a direct result of Defendants' allegedly fraudulent conduct").

Plaintiffs also allege Nova Diagnostics' and Agdamag's conduct with sufficient particularity to satisfy Rule 9(b)'s heightened pleading standard.  *AFO Imaging, Inc.*, 2021 WL 734575, at *10.  For example, Plaintiffs' Complaint identifies at least 11 specific instances in which Nova Diagnostics, with Agdamag as its purported medical director, submitted alleged fraudulent billing to Plaintiffs, including by identifying the specific date, nature, and subsequent billing of those non-compensable services.  *See, e.g.*, (Dkt. 1 ¶¶ 41(ix), 41(xi), 58(vi), 62(v), 67(v), 69(vi), 86(iii), 86(iv), 98(i), 107(vii), 107(ix).)  Plaintiffs also attached to their Complaint a 181-page spreadsheet listing the claim number, date of accident, approximate date of mailing, CPT billing code, and amount charged for 16,214 bills submitted through Nova Diagnostics between May 2017 and October 2021.  (Dkt. 1-5.)  Such allegations are sufficient to put Nova Diagnostics and Agdamag adequately on notice of their alleged fraudulent acts.  *See, e.g.*, *AFO Imaging, Inc.*, 2021 WL 734575, at *10 (declining to dismiss FDUTPA claim

- 13 -

where "Plaintiffs provide a significant number of particular examples of these allegedly fraudulent bills[,] [t]hese examples specify the alleged misrepresentations, when they were made, and who was responsible for the misrepresentations[, and] the complaint adequately explains how these fraudulent bills misled Plaintiffs, and what the Advanced Diagnostic Defendants gained through the scheme"); *Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *4 (finding that State Farm's allegations "that every bill submitted by Defendants constituted a false statement of fact . . . is sufficient to satisfy Rule 9(b)."). The undersigned therefore recommends that Plaintiffs have alleged sufficient facts to find that Nova Diagnostics and Agdamag violated the FDUTPA.

### 2. Common Law Fraud

Plaintiffs also seek a final default judgment against Nova Diagnostics and Agdamag on their Twenty-Ninth Cause of Action for common law fraud. (Dkt. 215.) To state a claim for common law fraud under Florida law, a plaintiff must plead facts sufficient to establish:

> (1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person.

*State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.*, 427 F. App'x 714, 720 (11th Cir. 2011) *rev'd in part on other grounds sub nom.*, *State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014) (quoting *Gandy v. Trans World Computer Tech. Grp.*, 787 So. 2d 116, 118 (Fla. 2d DCA 2001)).

- 14 -

As explained above, while Federal Rule of Civil Procedure 9(b) requires that claims of fraud be pleaded with particularity, Plaintiffs' Complaint provides sufficient detail to satisfy this heightened pleading standard. *See, e.g.*, (Dkt. 1 ¶¶ 41(ix), 41(xi), 58(vi), 62(v), 67(v), 69(vi), 86(iii), 86(iv), 98(i), 107(vii), 107(ix); Dkt. 1-5.); *Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *4.

As alleged in the Complaint, Nova Diagnostics and Agdamag submitted claims for reimbursement to Plaintiffs that contained false statements, including that the services were provided in accordance with applicable law and that the claims themselves were reimbursable. *E.g.*, (Dkt. 1 ¶¶ 139–40; Dkt. 1-5). Plaintiffs further allege that "Defendants knowingly misrepresented and concealed" that the submitted claims were non-reimbursable, including that "Nova Diagnostics lacked legitimate medical directors . . . ; [] that the [f]raudulent [s]ervices were provided – to the extent that they were provided at all – by unsupervised massage therapists and/or chiropractic assistants . . . ; and [] that the [f]raudulent [s]ervices were medically unnecessary." (Dkt. 1 ¶ 141.). Plaintiffs also allege that the fraudulent claims were submitted for the purpose of inducing Plaintiffs' payment of the claims, that Plaintiffs did, in fact, rely on the accuracy of the submitted claims, and that Plaintiffs suffered damage as a result of paying claims for otherwise non-reimbursable services. (*Id.* ¶ 141–43; Dkt. 215-1); *see also* (Dkt. 1 ¶ 33 (alleging that the medical director Defendants, including Agdamag unlawfully abdicated their duties "because they sought to continue profiting from the fraudulent billing submitted through these clinics").)

Thus, the undersigned recommends that Plaintiffs' Complaint contains sufficient allegations to establish each element of Plaintiffs' Twenty-Ninth Cause of Action for common law fraud against Nova Diagnostics and Agdamag. *See, e.g.*, *Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *4 (finding sufficient allegations of personal involvement in alleged scheme to defraud insurers to state claim against individual owner and medical clinic); *State Farm Mut. Auto. Ins. Co. v. Complete Care Centers, LLC*, No. 6:20-cv-1240-WWB-EJK, 2021 WL 2946280, at *6 (M.D. Fla. July 12, 2021) (allegations sufficient to state claim of fraud against clinic owner where individual "was aware of, directed, participated in, and benefited from the allegedly fraudulent conduct"); *Health & Wellness Servs., Inc.*, 389 F. Supp. 3d at 1144–47 (denying motion to dismiss fraud claims brought against medical director and clinic for alleged fraudulent billing practices).

### 3. Unjust Enrichment

Plaintiffs also seek entry of a final default judgment against Nova Diagnostics and Agdamag on their Thirtieth Cause of Action for unjust enrichment. (Dkt. 215.) To state a claim for unjust enrichment under Florida law, a plaintiff must plead three elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Advantacare of Fla., LLC*, 2020 WL 2630226, at *8 (quoting *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012)). In *Allstate Ins. Co. v. Vizcay*, the Eleventh Circuit held that an insurer can recover the amounts paid to a medical clinic operating in

violation of Florida's Clinic Act's licensing requirements under a theory of unjust enrichment.  826 F.3d 1326, 1330–31 (11th Cir. 2016); *see also State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) ("If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment.") (citing *Standifer v. Metro. Dade Cnty.*, 519 So. 2d 53, 54 (Fla. 3d DCA 1988)).

As explained above, Plaintiffs have sufficiently alleged that they conferred a benefit on Nova Diagnostics and Agdamag by paying the otherwise non-reimbursable claims.  (Dkt. 1 ¶ 142; Dkt. 1-5.)  Plaintiffs further allege Nova Diagnostics and Agdamag accepted and retained those fraudulently induced payments from Plaintiffs,[8] and it would be inequitable for Nova Diagnostics and Agdamag to retain those payments.  (Dkt. 1 ¶¶ 377–78.)  Thus, the well-pleaded factual allegations in Plaintiffs' Complaint are sufficient to state a claim for unjust enrichment against Nova Diagnostics and Agdamag.  *See, e.g.*, *AFO Imaging, Inc.*, 2021 WL 734575, at *12 (declining to dismiss unjust enrichment claim where plaintiffs "allege that they conferred a benefit by paying the fraudulent bills submitted by the Advanced

---

[8] To the extent that Plaintiffs do not allege benefits paid directly to Agdamag, but rather through Nova Diagnostics, the Complaint sufficiently alleges that Agdamag profited from the alleged scheme to support a claim of unjust enrichment.  *See* (Dkt. 1 ¶ 33); *see, e.g.*, *Health & Wellness Servs., Inc.*, 389 F. Supp. 3d at 1148 ("As Dr. Coll 'claimed to be the medical director at Medical Wellness,' State Farm properly alleges he received a direct benefit from State Farm's payments to Medical Wellness.") (citing *State Farm Mut. Auto. Ins. Co. v. Brown*, 16-80793-CIV, 2017 WL 1291995, at *7 (S.D. Fla. Mar. 30, 2017) ("When defendants act in concert to unjustly obtain benefits, each can be held to have been unjustly enriched by virtue of the benefit derived from the scheme, even if the benefit was not conferred on them directly.").

Diagnostic Defendants, who were enriched by those payments" and defendants' retention of those payments "violates fundamental principles of justice, equity, and good conscience, given the unlawful scheme"); *State Farm Mut. Auto. Ins. Co. v. Fam. Prac. & Rehab, Inc.*, No. 6:18-cv-223-Orl-28LRH, 2019 WL 4418221, at \*7 (M.D. Fla. Sept. 16, 2019) (granting plaintiff summary judgment on unjust enrichment claim where "payments were for unlawful charges that were 'noncompensable and unenforceable'"); *Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at \*5 ("State Farm was unaware of the licensing violation because of Defendants allegedly fraudulent conduct. This is sufficient to state a claim for unjust enrichment.").

### 4.  Declaratory Judgment

Finally, Plaintiffs' Twenty-Fifth Cause of Action seeks entry of a declaratory judgment against Nova Diagnostics pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2022, "declaring that Nova Diagnostics has no right to receive payment for any pending bills submitted to [Plaintiffs]." (Dkt. 1 ¶ 341; Dkt. 215.)  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  18 U.S.C. § 2201.

"Under Florida law [an insurer] [is] entitled to seek a judicial remedy to recover the amounts it paid [to a clinic operating in violation of the Clinic Act] and to obtain a declaratory judgment that it is not required to pay [the clinic] the amount of the outstanding bills."  *Vizcay*, 826 F.3d at 1330 (quoting *Silver Star Health & Rehab*, 739

F.3d at 584); *Fam. Prac. & Rehab, Inc.*, 2019 WL 4418221, at *7 ("Courts have recognized a declaratory cause of action for insurers when there are pending payments due for services unlawfully rendered.").  "[A] plaintiff seeking declaratory relief must show a 'substantial continuing controversy between two adverse parties' and a 'substantial likelihood that he will suffer injury in the future.'" *Gov't Emps. Ins. Co. v. Right Spinal Clinic, Inc.*, No. 8:20-cv-0802-KKM-AAS, 2022 WL 2466039, at *9 (M.D. Fla. July 6, 2022) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346–47 (11th Cir. 1999).  A plaintiff-insurer satisfies this standard "when it argues that it is not obligated to pay outstanding PIP bills." *Id.* (citing *Silver Star Health & Rehab*, 739 F.3d at 584).

As outlined above, the well-pleaded allegations in Plaintiffs' Complaint establish that the billing submitted through Nova Diagnostics was fraudulent and non-reimbursable in that the services billed were provided in violation of the Clinic Act, the No-Fault Law, and other relevant Florida law.  *E.g.*, (Dkt. 1 ¶¶ 25–33, 34–40, 48–49, 139–40.)  Plaintiffs further represent that "Nova Diagnostics has submitted a substantial amount of PIP billing to [Plaintiffs] that has not been paid, and [Nova Diagnostics] is actively pursuing collection of much of this billing."  (Dkt. 215 at 8; Dkt. 215-1.)  Plaintiffs state that Nova Diagnostics continues to seek payment on those pending claims, including by submitting demands to Plaintiffs and/or filing lawsuits in Florida state courts.  (*Id.*)

Therefore, the undersigned recommends that Plaintiffs have alleged sufficient facts to establish an actual case or controversy between Plaintiffs and Nova

Diagnostics and to warrant entry of a default declaratory judgment that Nova Diagnostics is not entitled to receive payment for any pending bills submitted to Plaintiffs. *State Farm Mut. Auto. Ins. Co. v. LaRocca*, No. 8:21-cv-2536-SCB-AEP, 2022 WL 1401565, at *8 (M.D. Fla. May 3, 2022) ("federal courts have consistently held that insurers may pursue claims for declaratory relief with respect to unpaid fraudulent claims despite having not yet relied on them or suffered damages in circumstances such as these"); *State Farm Mut. Auto. Ins. Co. v. Filenger*, 362 F. Supp. 3d 1246, 1254–55 (S.D. Fla. 2018) ("Plaintiffs have shown . . . that Defendant Clinics were not licensed by the [Clinic Act] and therefore they are entitled to a declaratory judgment that they are not required to pay any outstanding bills from those clinics arising from the violation period."); *State Farm Mut. Auto. Ins. Co. v. Miami Med. Care Ctr., Inc.*, No. 15-cv-22660-DPG, 2016 WL 6962872, at *5 (S.D. Fla. Nov. 29, 2016) (awarding declaratory relief on default judgment that plaintiffs are not obligated to pay outstanding bills).

## C. Damages

Having found that Plaintiffs are entitled to default judgment on their FDUTPA, common law fraud, and unjust enrichment claims, the undersigned next considers the amount of damages Plaintiffs should recover.   Under FDUTPA, a plaintiff may recover "actual damages."  Fla. Stat. § 501.211; *Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *5 (actual damages may exist "when the product is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages").  Similarly, under theories of common law fraud and unjust

enrichment, a plaintiff-insurer may recover damages in the amount paid to a medical clinic for fraudulent services.  *See, e.g.*, *Vizcay*, 826 F.3d at 1330; *Gov't Emps. Ins. Co. v. Gomez-Cortes*, No. 20-21558-CIV, 2022 WL 820377, at *3 (S.D. Fla. Jan. 20, 2022), (finding defendants jointly and severally liable for "damages resulting from each of the Clinic Defendants' fraudulent PIP billing to GEICO" on claims of FDUTPA violations, common law fraud, and unjust enrichment), *report and recommendation adopted,* No. 20-21558-CIV, 2022 WL 2817961 (S.D. Fla. July 19, 2022).

Plaintiffs allege that as a result of the fraudulent scheme, "[e]ach and every charge submitted through the Clinic Defendants since at least 2015 has been fraudulent and unlawful[.]" (Dkt. 1 ¶¶ 2, 139–40.)  As such, Plaintiffs seek damages against Nova Diagnostics and Agdamag in the amount of all voluntary payments that Plaintiffs made to Nova Diagnostics from June 2017 through December 2021 plus prejudgment interest.  (Dkt. 215 at 14–16.)   In total, Plaintiff seek to recover $637,688.10 in payments made to Nova Diagnostics and $22,993.98 in prejudgment interest.  (Dkt. 215 at 16.)

As an initial matter, the undersigned finds, in its discretion, that a hearing is not required to determine Plaintiffs' damages because "sufficient evidence is submitted to support the request."  *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008); *see State Farm Mut. Auto. Ins. Co. v. Advance Med. Assocs.*, No. 1:17-cv-21737-UU, 2018 WL 7144244, at *2 (S.D. Fla. Dec. 20, 2018) (awarding final default judgment and finding affidavit listing payments made to defendants sufficient to establish damages without evidentiary hearing).  In support of their request for damages,

Plaintiffs submit the affidavits of Justin Oliva and Yonatan Bernstein.  (Dkt. 215-1.)
Mr. Oliva details the method by which he calculated Plaintiffs' payments to Nova
Diagnostics and avers that Plaintiffs "voluntarily paid Nova Diagnostics $637,688.10
for healthcare services purportedly provided to [Plaintiffs'] insureds between 2017 and
the present." [9]  (Dkt. 215-1 at 6.)  Mr. Bernstein avers that based on those payments
and the interest rates set by Florida's Chief Financial Officer, Plaintiffs are also entitled
to $22,993.98 in prejudgment interest.  (Dkt. 215-1 at 3.)

Accordingly, the undersigned recommends that Plaintiffs should be awarded
$637,688.10 in damages on their FDUTPA, common law fraud, and unjust
enrichment claims.  *See, e.g.*, *Gomez-Cortes*, 2022 WL 820377, at *3 (finding defendants
jointly and severally liable for "damages resulting from each of the Clinic Defendants'
fraudulent PIP billing to GEICO" on claims of FDUTPA violations, common law

---

[9] Under Florida law, a legal or equitable action based on fraud must be brought within four years.  Fla.
Stat. § 95.11(3)(j); *see Advantacare of Fla., LLC*, 2020 WL 2630226, at *3.  Plaintiffs' Complaint was
filed on November 1, 2021 (Dkt. 1), and with the Motion, Plaintiffs seek recovery for conduct beyond
the four-year limitations period to June 2017 (Dkt. 215).  Nevertheless, to the extent that Plaintiffs
allege violations beyond that limitations period, they have also sufficiently alleged that Defendants
fraudulently concealed their scheme and that Plaintiffs "did not discover and could not reasonably
have discovered that its damages were attributable to fraud until shortly before it commenced this
action."  (Dkt. 1 ¶¶ 141–43.)  Under Florida law, the delayed discovery doctrine, as codified in Fla.
Stat. § 95.031, provides that the statute of limitations for an action based on fraud begins running
"from the time the facts giving rise to the cause of action were discovered or should have been
discovered with the exercise of due diligence."  Fla. Stat. § 95.031(2)(a).  Plaintiffs' Complaint contains
sufficient allegations to find that Plaintiffs did not learn of the purported fraudulent scheme until
shortly before filing this action and their claims arising from submissions that would otherwise be
beyond the applicable statute of limitations are therefore not time-barred.  *See, e.g.*, *Advantacare of Fla.,
LLC*, 2020 WL 2630226, at *4 ("These allegations are sufficient because they imply that Plaintiffs did
not know of the purported secret arrangement."); *Health & Wellness Servs., Inc.*, 389 F. Supp. 3d at 1151
("As State Farm points out, it specifically alleges in its complaint that, until just prior to initiating this
action, State Farm was unaware of the facts supporting its case and the Defendants actively concealed
their misconduct.  Because State Farm sufficiently alleges delayed discovery, fraudulent concealment,
and equitable tolling, dismissal at this stage of the litigation, based on the applicable statute of
limitations, would be improper.")

fraud, and unjust enrichment); *Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1334 (S.D. Fla. 2009) ("In a case such as this one, where Defendants each filled a defined role in an ongoing fraudulent enterprise that contributed to the damages incurred by Plaintiffs, it is appropriate to impose joint and several liability.").[10]

Further, under Florida law, "a plaintiff is entitled to prejudgment interest as a matter of law." *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007). "Florida courts have held that prejudgment interest does not have to be pled, and an award of prejudgment interest is non-discretionary once the amount of loss is ascertained." *Alhassid v. Bank of Am., N.A.*, 688 F. App'x 753, 761 (11th Cir. 2017) (citing *Mercedes-Benz of N. Am., Inc. v. Florescue & Andrews Invs., Inc.*, 653 So. 2d 1067, 1068 (Fla. 4th DCA 1995)).   The rate of prejudgment interest is set quarterly by Florida's Chief Financial Officer.   *Gomez-Cortes*, 2022 WL 820377, at *3 (citing Fla. Stat. §§ 687.01 at 55.03).   Plaintiffs' Motion and Mr. Bernstein's declaration provide a detailed calculation of Plaintiffs' entitlement to prejudgment interest based on the rate set by Florida's Chief Financial Officer.   (Dkts. 215, 215-1.)   Accordingly, the

---

[10] Plaintiffs' Complaint alleges that Agdamag acted as the purported medical director for Nova Diagnostics during only a portion of the relevant period. *See* (Dkt. 1 ¶ 27 ("Guerra retained Brister *and then* Agdamag . . . to falsely pose as the legitimate medical directors at Nova Diagnostics.") (emphasis added)).   The precise date on which Agdamag became Nova Diagnostics' purported medical director is unclear, however at least two allegations in the Complaint suggest that Brister was the purported medical director during some of the relevant period. *See* (*id.* ¶¶ 107(v) (describing fraudulently billing submitted by Nova Diagostics, Guerra, Brister, and Kalin for services provided on July 24, 2017), 107(vi) (same for services provided on September 22, 2017).)   Agdamag should therefore only be jointly liable with Nova Diagnostics for payments made by Plaintiffs during the time that he served as Nova Diagnostics' purported medical director. *See Fam. Prac. & Rehab, Inc.*, 2019 WL 4418221, at *7 ("Although State Farm is entitled to damages, there are genuine issues of material fact as to the amount of damages attributable to Mortimer.   Although Mortimer admitted to directly benefiting from the payments made by State Farm, it is unclear that he should be held jointly and severally liable for the full value of payments conferred to Family Practice.")

undersigned recommends that Plaintiffs are entitled to prejudgment interest in the requested amount of $22,993.98.

### D. Incomplete Relief

Federal Rule of Civil Procedure 54 provides that "[t]he court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." With the Motion, Plaintiffs do not seek default final judgment as to all causes of action asserted against Agdamag. Specifically, the Twenty-Sixth Cause of Action and the Twenty Seventh Cause of Action assert violations of RICO against Agdamag, Guerra, and Brister. *See* (Dkt. 1 ¶¶ 342–57.) Therefore, in accordance with Rule 54, the undersigned recommends that the court delay entry of final judgment as outlined above until Plaintiffs withdraw or terminate the remaining causes of action as to Agdamag, or file a proper motion for relief on those claims. *See, e.g.*, *FX Group, LLC v. Vision Mgmt. & Enter., LLC*, No. 8:20-cv-468-TPB-JSS (M.D. Fla. Oct. 12, 2021), ECF No. 59 (directing plaintiff to "withdraw, terminate, or make a proper motion for default judgment on the nine unresolved causes of action").

Accordingly, it is **RECOMMENDED** that:

1. Plaintiffs' Motion for Final Default Judgment (Dkt. 215) be **GRANTED in part**.

2. The Clerk be directed to enter judgment in favor of Plaintiffs against Defendants Nova Diagnostics and Agdamag on Plaintiffs' Twenty-

Eighth Cause of Action for violation of the FDUTPA, on Plaintiffs'
Twenty-Ninth Cause of Action for common law fraud, and on Plaintiffs'
Thirtieth Cause of Action for unjust enrichment.

3.  Plaintiffs be awarded damages in the amount of $637,688.10 and
    prejudgment interest in the amount of $22,993.98.

4.  The Clerk be directed to enter judgment in favor of Plaintiffs against
    Defendant Nova Diagnostics on Plaintiffs' Twenty-Fifth Cause of Action
    for declaratory judgment.

5.  The court enter a declaratory judgment pursuant to 28 U.S.C. § 2201
    declaring that Defendant Nova Diagnostics has no right to receive
    payment for any pending bills submitted to Plaintiffs.

6.  The court delay entry of final judgment against Defendants Nova
    Diagnostics and Agdamag until Plaintiffs withdraw, terminate, or make
    a proper motion for default judgment on the remaining causes of action
    against Agdamag.

**IT IS SO REPORTED** in Tampa, Florida, on December 29, 2022.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

A party has 14 days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Virginia M. Hernandez Covington
Counsel of Record